IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRUCE CASANOVA, | ) |
| | ) |
| Plaintiff, | ) No. 06 C 4762 |
| | ) |
| v. | ) Judge Ronald A. Guzmán |
| | ) |
| AMERICAN AIRLINES, INC., | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Bruce Casanova has sued America Airlines, Inc. alleging that it terminated him in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, and in retaliation for filing a workers' compensation claim. The case is before the Court on defendant's motion pursuant to Federal Rule of Civil Procedure ("Rule") 56(c) for summary judgment. For the reasons set forth below, the motion is granted in part and denied in part.

### Facts[1]

Plaintiff was employed by defendant as a fleet service clerk from 1978 through December 6, 2005. (Def.'s LR 56.1(a)(3) Stmt. ¶¶ 1, 21.) Throughout his employment, plaintiff was governed by American's Rules of Conduct which, among other things: (1) require employees to "[f]ollow instructions from supervisors;" and (2) prohibit "[m]isrepresentation of facts or falsification of records" and "[d]ishonesty of any kind in relations with the company." (*Id.* ¶¶ 5-8.)

---

[1] Unless noted otherwise, the following facts are undisputed.

American's procedures for workplace injuries are as follows. Employees are required to report injuries as soon as possible and, if they seek medical attention, to have their doctor complete a Physical Capabilities Assessment Form ("PCAF") setting forth the employee's activity restrictions. (*Id.* ¶¶ 13-14; Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 13-14; Def.'s App., Ex. 8, Ground Employee Injury-On-Duty Information Package at D00462 (stating that "[a] completed Physical Capabilities Assessment Form (PCAF) is required after [the employee's] first doctor's visit").) The customer service manager on duty when an injury is reported completes an injury report on American's computer system. (*Id.* ¶ 15.)[2] When an injury report is completed, it is submitted via email to American's vice president, injury managers, lost time department, safety department and the employee's supervisor. (App. Exs. Pl.'s Resp. Def.'s Mot. Summ. J., Ex. B, Crowe Dep. at 32.) If the employee seeks medical attention, the injury manager sends the injury report to Specialty Risk Services ("SRS"), American's workers' compensation insurance administrator. (Def.'s LR 56.1(a)(3) Stmt. ¶ 16.)

In addition to an injury report, a board of inquiry ("BOI") investigation is conducted. (*Id.* ¶ 20.) That investigation includes, among other things, an in-depth interview of the injured employee. (*Id.*)

Plaintiff suffered a number of injuries while he was employed by American. (*Id.* ¶ 22; Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 22.) The first occurred in March 1996 when he injured his neck and right elbow while pulling luggage carts. (Def.'s LR 56.1(a)(3) Stmt. ¶ 23.) Plaintiff missed three months of work as a result of this injury and filed a workers' compensation claim, which American settled

---

[2]Plaintiff denies the assertions American makes in this paragraph, but his response does not controvert these facts. (*See* Pl.'s LR 56.(b)(3)(B) Stmt. ¶ 15.)

for $11,000.00. (*Id.*) Plaintiff was forty-one-years old at the time of this injury and was not disciplined or retaliated against by defendant because of the injury or claim. (*Id.* ¶ 24.)

Plaintiff suffered another injury, to his neck and back, in July 1998. (*Id.* ¶ 25.) Afterward, he was placed on light duty until he was well enough to return to full duty. (*Id.*) Once again, plaintiff filed a workers' compensation claim, which American settled for $4,500.00. (*Id.* ¶ 26.) Plaintiff was forty-three-years old at the time and was neither disciplined nor retaliated against by defendant because of this injury or claim. (*Id.*)

In November 1998, plaintiff injured his knee. (*Id.* ¶ 27.) As a result, he missed three weeks of work and then was assigned to light duty until he recovered. (*Id.*) Plaintiff again filed for workers' compensation, a claim that American settled for $14,000.00. (*Id.* ¶ 28.) Plaintiff was forty-three- years old at the time and was neither disciplined or retaliated against by defendant because of this injury or claim. (*Id.*)

In October 2003, plaintiff injured his elbow because of repetitive lifting. (*Id.* ¶ 29.) He did not report the injury until a week later, when he injured his shoulder and neck while pulling a baggage container. (*Id.*) As a result of these injuries, plaintiff needed surgery and was unable to work for five months. (*Id.* ¶ 30.) Plaintiff has filed a workers' compensation claim for these injuries, which are still pending. (*Id.*)

The injury that spawned this suit occurred on Friday, November 11, 2005, when plaintiff hurt his left arm while lifting a golf bag onto a luggage tractor. (*Id.* ¶ 32.) The following Monday, half way through his shift, plaintiff reported the injury to his supervisor, Ronald Lee. (*Id.* ¶ 33.) Lee sent plaintiff to Jacqueline Rios, the customer service manager on duty, to complete an injury report. (*Id.* ¶ 33.)

When he went to see Rios, plaintiff told her that he was in severe pain. (*Id.* ¶ 34.) Rios sent plaintiff to the UIC medical facility at O'Hare. (*Id.*) The UIC doctor diagnosed plaintiff's injury as a left arm strain and gave plaintiff a temporary restriction limiting the use of his left arm. (*Id.* ¶ 35.)

After the medical examination, plaintiff returned to Rios to complete the injury report. (*Id.* ¶ 36; Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 36.) Rios tried to conduct a BOI investigation, but plaintiff said he was in too much pain and asked to postpone it. (*Id.*) According to Rios, despite his protestations of pain, at one point during their meeting, plaintiff reached across his body with his left hand, grabbed his cell phone and conversed on the phone while holding it in his left hand. (Def.'s LR 56.1(a)(3) Stmt. ¶ 37.)

After plaintiff went home, Rios called Debbie Havens, manager of the lost time department, and requested that American conduct surveillance of plaintiff. (App. Exs. Pl.'s Resp. Def.'s Mot. Summ. J., Ex. G, Rios Dep. at 83-84.) Rios testified that she made the request because he said he "was in a lot of pain, we couldn't complete the BOI report, but I witnessed him picking up his cell phone when it rang, and he had no problem doing so." (*Id.* at 84.) However, the case notes of Kimberly Roush, one of American's human resource specialists, say that "surveillance was initiated" because of "multiple injuries." (App. Exs. Pl.'s Resp. Def.'s Mot. Summ. J., Ex. J, Roush Case Notes at D00813.)

On November 15, 2005, plaintiff was examined by his own physician, Dr. Visotsky. (Def.'s LR 56.1(a)(3) Stmt. ¶ 39.) Dr. Visotsky completed a PCAF that, among other things, said plaintiff could not: drive; use his left or right arms, hands, feet or legs; climb; balance; bend/stoop; kneel/squat; push/pull; lift overhead; or use a keyboard. (Def.'s App., Ex. 14, PCAF of 11/15/05.)

4

American employee Patrick Harrington surveilled plaintiff on November 15 and 18, 2005. (App. Exs. Pl.'s Resp. Def.'s Mot. Summ. J., Ex. N, Harrington Dep. at 16, 20; Def.'s App., Ex. 18, Surveillance Report of 5/26/06.) On November 15, Harrington saw plaintiff drive a car and carry books under his left arm. (App. Exs. Pl.'s Resp. Def.'s Mot. Summ. J., Ex. N, Harrington Dep. at 23-25; *id.*, Ex. H, Casanova Dep. at 127-28; Def.'s App., Ex. 18, Surveillance Report of 5/26/06.) On November 18, Harrington saw plaintiff drive and use his left hand to move a garbage can from the curb to his garage. (*Id.*)

On November 18, 2005, Dr. Visotsky sent a revised PCAF to American that said plaintiff could not use his left arm, lift, climb, bend/stoop, push/pull or do overhead work. (Def.'s App., Ex. 15, PCAF form of 11/18/05; Def.'s LR 56.1(a)(3) Stmt. ¶ 41.)

After receiving the revised PCAF, injury manager Judy Judge called plaintiff and told him to return to work for light duty on November 23, 2005. (Def.'s LR 56.1(a)(3) Stmt. ¶ 42; Pl.'s LR 56.1 (b)(3)(B) Stmt. ¶ 46.) Plaintiff, who did not know that his restrictions had been changed, asked Judge to send him a copy of the form. (*Id.*) When Judge told him to get the form from his doctor, plaintiff said he could not do that because he was restricted from driving. (*Id.*) Judge faxed plaintiff the form, and he returned to work as instructed. (Def.'s LR 56.1(a)(3) Stmt. ¶ 43.)

On December 5, 2005, American held a 29(f) meeting with plaintiff. (*Id.* ¶ 46; Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 46.) Such meetings, named for the article and paragraph of the collective bargaining agreement by which they are governed, are convened to determine if an employee should be disciplined. (Def.'s LR 56.1(a)(3) ¶ 11.) The meeting was attended by plaintiff, his union steward Guy Maloberti, American customer service manager Rios, and American human resources representative Roush. (*Id.* ¶ 46; Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 46.) According to Rios' notes of that

meeting, plaintiff admitted that he had driven his car on several occasions but denied having otherwise used his left arm during the period between his injury and his return to light duty work. (*See* Def.'s App., Ex. 19, 29F Notes of 12/6/05 at 13-18.)

At the end of the meeting, Roush directed plaintiff to prepare a statement about his injury and the circumstances surrounding it. (*Id.* at 19; App. Exs. Pl.'s Resp. Def.'s Mot. Summ. J., Ex. A, Roush Dep. at 178-81.) Plaintiff prepared a statement, but it said nothing about his injury other than that he had truthfully answered the questions posed to him about it. (Def.'s App., Ex. 20, Casanova Statement of 12/6/05.)

On December 6, 2005, Rios terminated plaintiff for violating conduct rules seven, sixteen and thirty-four, which prohibit employees from being insubordinate or misrepresenting facts to or being dishonest with American. (Def.'s LR 56.1(a)(3) ¶¶ 5-8; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 11.)

Plaintiff filed a grievance about the termination with his union. (Def.'s LR 56.1(a)(3) Stmt. ¶ 53; Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 53.) In connection with the grievance, plaintiff wrote a letter in which he admitted that he had driven and performed "a few simple tasks which did not stress [his] injury" when he was off of work and under surveillance by American. (Def.'s App., Ex. 21, Letter from Casanova to Whom It May Concern of 1/8/06.) The union declined to arbitrate the grievance. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 53.)

## Discussion

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

In Count I of his complaint, plaintiff alleges that defendant terminated him because of his age in violation of the ADEA.[3] Plaintiff can defeat defendant's motion on this claim either by presenting direct or circumstantial evidence of discriminatory intent or by employing the indirect, burden-shifting method of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060-61 (7th Cir. 2003). Plaintiff offers no direct evidence of discrimination, so the Court will analyze his claim under the latter method.

The burden-shifting method requires plaintiff first to establish a *prima facie* case of discrimination by providing evidence that: (1) he is a member of a protected class; (2) he was meeting defendant's legitimate performance expectations; (3) he suffered an adverse employment action; and (4) defendant treated him less favorably than a similarly situated, substantially younger person. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 659 (7th Cir. 2001). If plaintiff makes a *prima facie* case, the burden of production shifts to defendant to offer a legitimate, nondiscriminatory reason for its actions. *Cerutti*, 349 F.3d at 1061. If defendant does so, the burden shifts back to plaintiff to present evidence that the proffered reasons are pretextual. *Id.* "A plaintiff does not reach

---

[3] In his response to defendant's summary judgment motion, plaintiff requests leave to dismiss his ADEA claim without prejudice. Because defendant objects to this eleventh hour request, the Court denies it.

7

the pretext stage, however, unless he first establishes a *prima facie* case of discrimination under the indirect method." *Id.*

Plaintiff has not made a *prima facie* case because he has no evidence to support the last element. Plaintiff has not identified any substantially younger fleet service clerk who was accused of similar misconduct but was not terminated by American. Absent such evidence, defendant's motion for summary judgment on Count I must be granted.

In Count II of his complaint, plaintiff alleges that American terminated him because he filed a workers' compensation claim. To prevail on such a claim under Illinois law, plaintiff must show that he was employed by American before his injury, he exercised a right granted by the Workers' Compensation Act, and his discharge was causally connected to his exercise of that right. *Hiatt v. Rockwell Int'l Corp.*, 26 F.3d 761, 767 (7th Cir. 1994). It is not clear, however, "whether . . . a federal court exercising diversity jurisdiction to hear a retaliatory discharge claim under the Illinois Workers' Compensation Act must apply the Illinois framework, or whether it may use the [*McDonnell Douglas*] burden-shifting method." *McCoy v. Maytag Corp.*, 495 F.3d 515, 521 (7th Cir. 2007). Under either method, though, plaintiff can defeat American's motion only if he offers evidence that suggests American's proffered reason for terminating him was pretextual. *Id.* Thus, the Court assumes, *arguendo*, that plaintiff has made a *prima facie* case of retaliation and turns to the issue of pretext. *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981) (stating that a reason is pretextual if it is "unworthy of credence" or the discharge was "more likely" motivated by retaliation); *Horton v. Miller Chem. Co., Inc.*, 776 F.2d 1351, 1359 n.11 (7th Cir. 1985) (applying *Burdine* to Illinois retaliatory discharge case); *see also Clay v. Holy Cross Hosp.*, 253 F.3d

1000, 1007 (7th Cir. 2001) ("[Plaintiff] must present facts to rebut each and every legitimate, non-discriminatory reason advanced by [defendant] in order to survive summary judgment.").

American says it discharged plaintiff because he was insubordinate, misrepresented facts regarding ,and was dishonest with American about, his November 2005 injury in violation of conduct rules seven, sixteen and thirty-four. (Def.'s LR 56.1(a)(3) ¶¶ 5-8; Pl.'s LR 56.1(b)(3)(C) Stmt. ¶ 11.) The charge of insubordination is based on plaintiff's failure to prepare a written statement about his injury as Roush directed him to do at the end of the 29(f) meeting. (*See* Def.'s App., Ex. 19, 29F Notes of 12/6/05 at 19; App. Exs. Pl.'s Resp. Def.'s Mot. Summ. J., Ex. A, Roush Dep. at 178-81.) Plaintiff says that he has raised a triable fact issue on this charge because he did, in fact, prepare such a statement. (*See* Def.'s App., Ex. 20, Casanova Stmt. of 12/6/05.)

The Court agrees. Though plaintiff's statement is hardly a tome, it does discuss his injury and subsequent conduct, the subjects Roush told him to address. (*See id.*; App. Exs. Pl.'s Resp. Def.'s Mot. Summ. J., Ex. L, Casanova Dep. at 144.) Thus, plaintiff has raised a fact issue for trial on the credibility of the insubordination charge.

Plaintiff has also raised a triable issue of fact as to credibility of the other reasons proffered for his termination. Though plaintiff admits that he used his left arm between the date of his injury and his return to light duty, there is no dispute that he did so sparingly and for only the simplest of tasks. (App. Exs. Pl.'s Resp. Def.'s Mot. Summ. J., Ex. L, Casanova Dep. at 151-57, 234-35.) Because there is no evidence that plaintiff did any repeated or strenuous lifting with his left arm, as he was required to do at work, a reasonable jury could conclude that his alleged lack of candor about his injury was not the real reason for his termination.

## Conclusion

For the reasons set forth above, there is no genuine issue of material fact as to the ADEA claim plaintiff asserts against defendant in Count I, and defendant is entitled to judgment as a matter of law on that claim. Defendant's motion for summary judgment [doc. no. 23] is, therefore, granted as to Count I but denied as to Count II.

**SO ORDERED.**  ENTER: 11/14/07

**HON. RONALD A. GUZMÁN**
**United States District Judge**