**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BRUCE CASANOVA,** | ) | |
| | ) | |
|     **Plaintiff,** | ) | No. 06 C 4762 |
| | ) | |
| v. | ) | Judge Ronald A. Guzmán |
| | ) | |
| **AMERICAN AIRLINES, INC.,** | ) | |
| | ) | |
|     **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

On May 16, 2008, a jury returned a verdict in favor of plaintiff on the workers' compensation retaliation claim he asserted against American Airlines, Inc. The case is before the Court on American's motion pursuant to Federal Rule of Civil Procedure ("Rule") 50 motion for judgment as a matter of law or, in the alternative, for a new trial pursuant to Rule 59. For the reasons set forth below, the Court denies the motion.

## Discussion

American is entitled to judgment as a matter of law under Rule 50 "only if a reasonable person could not find that the evidence supports a decision for [the plaintiff] on each essential element of the case, viewing the evidence in the light most favorable to the [plaintiff]." *Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 612 (7th Cir. 2001) (quotation and citation omitted). American is entitled to a new trial under Rule 59 only "if the verdict is against the manifest weight of the evidence." *ABM Marking, Inc. v. Zanasi Fratelli, S.R.L.*, 353 F.3d 541, 545 (7th Cir. 2003) (quotation omitted). American has the burden of showing that the evidence adduced

at trial was not legally sufficient to support the verdict. *Id.* (Rule 59); *Massey v. Blue Cross-Blue Shield of Ill.*, 226 F.3d 922, 924 (7th Cir. 2000) (Rule 50).

The parties agreed, and the jury was instructed, that plaintiff had to prove, among other things, "that the defendant discharged [him] because plaintiff had exercised his rights under the Illinois Workers' Compensation Act," which include "medical treatment and compensation for work-related injuries," or "because defendant anticipated that plaintiff would exercise such rights, and not because of any legitimate reason." (Trial Tr. at 976-77; 5/1/08 Hr'g Tr. at 3-5, 14-15.) The jury was also told that it could award punitive damages to plaintiff if it found that American's conduct was "willful and wanton," *i.e.*, "show[ed] actual or deliberate intention to harm or which, if not intentional, show[ed] an utter indifference to or conscious disregard for a person's rights and the rights of others," and "believe[d] that justice and the public good require[d]" such an award. (Trial Tr. at 979-80.) American contends that plaintiff failed adequately to prove both his claim and his entitlement to punitive damages.

The Court disagrees. Viewed favorably to plaintiff, the record shows that he injured his left arm at work on November 11, 2005, sought medical treatment for that injury on November 14, 2005 and did not return to work until November 23, 2005. (*Id.* at 74-76, 82-83, 91-93, 122.) The record also shows that it is American's practice to treat an injury-on-duty claim in which the employee loses time from work or receives medical treatment as a workers' compensation claim. (*Id.* at 578-79, 886-88.) Specifically, American sends such injury-on-duty reports to its third-party workers' compensation claims administrator, SRS. (*Id.* at 576, 878-79.) SRS, in turn, assigns the report a claim number, determines whether the injury is compensable and, if so, pays the employee, on American's behalf, whatever benefits are due. (*Id.* at 576, 879-80.) Moreover, the record shows,

that American followed this process with respect to plaintiff's November 2005 injury. (*Id.* at 583-84.)

The jury also heard evidence that plaintiff had sustained three other injuries in the period 1996-2003 for which he received medical treatment, lost time from work and/or filed a claim with the Illinois Industrial Commission. (*Id.* at 57-68.) Each time, plaintiff said, he completed an injury-on-duty report, contacted SRS and received some kind of compensation from American via SRS. (*Id.*) Further, Jacqueline Rios and Kimberly Roush both admitted that they knew about plaintiff's injury and claim history before they fired him. (*Id.* at 473-74, 496-97, 689-90, 711.)

Finally, there is sufficient evidence from which a reasonable person could infer that it was plaintiff's history of invoking his workers' compensation rights, not insubordination or dishonesty, that prompted American to fire him. For example, Roush's case notes for November 14, 2005 say:

> Jackie Rios, ORD ATM CSM, phoned to inquire about conducting an investigation with bag room Fleet Service Clerk Casanova. Employee reported an injury on duty on November 14, 2005, [sic] that he was injured on November 11, 2005. CSM Rios attempted to complete report when employee advised he was in too much pain. Jackie then sent him to UIC . . . . *Due to multiple injuries, surveillance was initiated by corporate security* . . . .

(*Id.* at 709 (emphasis added).) The only other reason American gave for ordering surveillance was that when plaintiff reported the injury to Rios, his words and conduct were inconsistent: He told Rios that he could not finish his shift because of the pain in his left arm, yet had no apparent difficulty using that arm to answer his cell phone. (*Id.* at 333-34, 710.) However, the jury was also told that plaintiff's cell phone weighed only a few ounces, and the bags he had to lift during his shift weighed as much as seventy pounds. (*Id.* at 70, 272-73.) Further, Rios testified that she had never met plaintiff and did not speak to his supervisor, ask anyone about plaintiff's character, check his seniority date or review his personnel file before she ordered the surveillance. (*Id.* at 334-36.)

3

Moreover, according to Rios and Roush, the surveillance revealed that, contrary to what he told American, plaintiff could drive and lift more than twenty pounds with his left arm, discoveries that prompted the 29f hearing that culminated in his termination. (*Id.* at 362-63, 365, 729-30.) The jury saw the surveillance photos, only one of which features plaintiff at all and then, just in silhouette, a barely-discernible figure apparently carrying some books. (*Id.* at 343-353, 566-69, 596-603.) The jury also saw the videotape, which shows plaintiff moving empty garbage cans, primarily – perhaps solely – with his *right* arm. (*Id.* at 360-62; *see* Joint Ex. 13.) Neither the photos nor the video show plaintiff driving. (*Id.*) Further, the jury was told, Rios and Roush were only able to view the video on the two-inch monitor attached to the camera, and they did so – for the first and only time – the morning of December 6, 2005, the day previously-scheduled for the 29f hearing. (*Id.* at 343, 483-84, 617-18, 715-16, 729.)

In addition, the parties offered evidence that: (1) American uses a progressive disciplinary system and there was no disciplinary action pending against plaintiff when he was fired (*id.* at 137, 364-68, 707); (2) plaintiff wrote a statement "in regards to the injury on duty on 11/11 and its surrounding," which is what Rios' notes of the 29f hearing say he was asked to do (*id.* at 132-36, 383-84); (3) American does not require employees to provide written statements in connection with 29f hearings or dictate the contents of any such statement (*id.* at 663-66); (5) at the time of the 29f hearing, plaintiff had been employed by American for more than twenty-seven years and had a seniority ranking of 51 out of 1400 fleet service clerks (*id.* at 53, 148); (6) Rios had the discretion to determine what, if any, disciplinary action would be imposed after the hearing (*id.* at 372-73); (7) American had "zero tolerance" for any act of dishonesty (*id.* at 470-71, 762), but took no action against the security employees who "borrowed" from American's lost and found the cameras they

4

used while surveilling plaintiff and did not return them for a "couple of years" (*id.* at 558-60); and, (8) as of the start of trial, plaintiff was receiving temporary total disability for the November 2005 injury from American via SRS (*id.* at 144-45).

In short, there is more than enough evidence from which a reasonable person could conclude that American fired plaintiff because he invoked his workers' compensation rights and its conduct warranted an award of punitive damages. American's motion for judgment as a matter of law or a new trial on these grounds is, therefore, denied.

American fares no better with its last argument, that the Court's denial of its request for a continuance merits a new trial. First, the Court did not, as American argues, deny it a continuance. Once Mr. Kimball was identified as alternate trial counsel, the Court continued the trial date for two weeks to allow him to prepare. (*See* 4/23/08 Hr'g Tr. at 2-9.) Second, even if the Court had refused to continue the trial, that decision would be grounds for a new trial only if constituted an abuse of discretion. *Commc'ns Maintenance, Inc. v. Motorola, Inc.*, 761 F.2d 1202, 1207 (7th Cir. 1985) (stating that "an application for a continuance is addressed to the sound discretion of the trial court" (quotation omitted)); *Washington v. Sherwin Real Estate, Inc.* 694 F.2d 1081, 1087 (7th Cir. 1982) ("[A]n abuse of discretion is established only where no reasonable man could agree with the district court; if reasonable men could differ as to the propriety of the court's action, no abuse of discretion has been shown." (quotation omitted)). The record shows no such abuse. On the contrary, it shows that the Court considered: trial counsel's personal circumstances; the size of the firm with which she practices; the involvement of other attorneys at her firm in the pretrial proceedings; the availability of another experienced trial attorney from her firm to try the case; the relative simplicity of the case; the age of the case; the amount of time and resources already invested in it by the Court

and the parties; and the Court's trial schedule before ruling on the motion. (*See* 4/21/08 Hr'g Tr. at 2-9; 4/23/08 Hr'g Tr. at 2-10.) Consequently, the Court's decision on the motion for continuance provides no basis for a new trial.

### **Conclusion**

For the reasons stated above, the Court denies American's motion for judgment as a matter of law or, in the alternative, for a new trial [doc. no. 93].

**SO ORDERED.**  ENTER:

**December 3, 2008**

*Ronald A. Guzman*

_____
**HON. RONALD A. GUZMAN**
**United States District Judge**