

CERTIFIED COPY
A True Copy
Teste:
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-1020

BRUCE CASANOVA,

                              *Plaintiff-Appellee*,

v.

AMERICAN AIRLINES, INC.,

                              *Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 4762—**Ronald A. Guzmán**, *Judge*.

ARGUED SEPTEMBER 25, 2009—DECIDED AUGUST 5, 2010

Before EASTERBROOK, *Chief Judge*, and KANNE and SYKES, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. American Airlines terminated Bruce Casanova's employment as a baggage handler. He sued, contending that the airline had retaliated against him for claiming workers' compensation benefits. Illinois deems such retaliation tortious. See 820 ILCS 305/4(h); *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 384 N.E.2d 353 (1978). A jury returned a verdict of more than $1 million: $112,000 for lost wages, $250,000 for emo-

tional injury, and $724,000 for punitive damages. The district judge denied the employer's post-judgment motions. 2008 U.S. Dist. LEXIS 97795 (N.D. Ill. Dec. 3, 2008). The judgment is defective—it says that the jury decided in plaintiff's favor but omits the relief—but nonetheless appealable because the litigation plainly is over in the district court. *Bankers Trust Co. v. Mallis*, 435 U.S. 381 (1978).

Casanova did not apply for workers' compensation benefits until several months after he had been fired, but he contends, and the jury must have concluded, that American Airlines knew that an application was forthcoming. He sprained his left arm (or perhaps tore a muscle in his left shoulder) on a Friday when lifting a golf bag. The next Monday, toward the end of his shift, he reported this injury to a supervisor, who sent him to the firm's medical center at O'Hare International Airport, which instructed Casanova not to use his left arm pending a further evaluation. The supervisor also reported this injury to Specialty Risk Services, which handles all injury and workers' compensation matters on the airline's behalf. This report to SRS is the foundation for Casanova's contention that his discharge was a form of anticipatory retaliation for the compensation claim that was likely to ensue.

The supervisor was skeptical of Casanova's assertions, because he told her that he was in too much pain to participate in the airline's standard post-injury debriefing (it needs to know what happened so that repetition can be prevented) yet had waited three days to report the

No. 09-1020                                                              3

injury and had worked most of a shift between the injury and the report. That Casanova answered a phone call with his left hand, without any apparent discomfort, further piqued the supervisor's interest. Other supervisory personnel at American Airlines decided that Casanova should be placed under surveillance to see whether he used his left arm. The two persons who watched Casanova reported that he did, frequently, and that he also drove his car even though his physician had instructed him not to drive until the injury healed.

   The pictures they took of these events were too grainy to be useful, but their information led the airline to direct Casanova to participate in an "Article 29F hearing." (The reference is to the part of the collective bargaining agreement that permits American Airlines to require its employees to appear and answer questions.) Casanova did not cooperate. Managers asked him about the injury and his activities since. Casanova usually replied: "I don't recall." He could not recall where or how he had hefted the golf bag, or what flight it had been on. He could not recall any of his activities during the days after he had reported the injury. When asked whether "I don't recall" would be his complete statement about the events, Casanova said: "I don't recall." He did, however, give concrete answers to several questions. When he was asked whether he had used his left arm *at all* during the days after the injury, he replied: "No." At trial, he admitted that this was a lie, which he justified by telling the jurors that he just didn't care what answers he was giving, because he was distraught and wanted the interrogation to end.

After the oral part of the procedure, the next step is a written statement. Managers directed Casanova to narrate in writing how the injury had occurred and what had happened later. Casanova refused. Eventually he produced two handwritten pages, but they do not contain any relevant information. Instead they protest the airline's decision to hold an Article 29F inquiry and assert that subjecting him to questions "has inflicted severe emotional distress upon me. . . . The procedures that American Airlines uses are harassing and intimidating." Managers told Casanova that this statement did not meet the requirements of the collective bargaining agreement; he declined to add anything, asserting that oral responses should suffice. He was fired that afternoon for lying during the hearing (the patter of "I don't recall" was transparent dissembling) and insubordination (refusal to prepare a written narrative).

Which poses the question: How could a jury return a verdict in Casanova's favor, and award more than $1 million, when the discharge is amply supported by undisputed facts? (Casanova *concedes* lying and feigning forgetfulness, and his written statement, which does not mention the injury and its aftermath, is part of the record.) How could the district judge deny a post-verdict motion under Fed. R. Civ. P. 50? The answer appears to be that the trial was hijacked by plaintiff's counsel and used to protest the Article 29F procedure. Instead of asking the jury to decide whether the (anticipated) request for workers' compensation, as opposed to the insubordination, caused the discharge, counsel asked the jury to decide whether American Airlines should

No. 09-1020 5

order surveillance of employees who claim to be injured, and whether employers should use such surveillance as the basis of interrogation.

The district judge's order denying the Rule 50 motion said that the evidence supports the verdict because the injury was a but-for cause of the discharge. But for the injury, there would not have been a meeting between Casanova and the supervisor, and American Airlines would not have concluded that Casanova was likely to seek workers' compensation benefits. But for the supervisor's suspicions (caused by the delayed report, plus Casanova's use of his left arm despite claiming pain too intense to engage in debriefing), surveillance would not have occurred. The memorandum justifying the surveillance mentions that Casanova has been injured several times, which the employer sees as a reason to look into the possibility of deceit. But for the surveillance, American Airlines would not have directed Casanova to participate in an Article 29F proceeding. But for the Article 29F proceeding, Casanova would not have lied and been insubordinate. But for the dishonesty and defiance, he would not have been fired. Hence the potential compensation claim caused the discharge. So the jury, too, must have reasoned—if it did not award damages for the employer's temerity in asking its employee to explain himself.

This case never should have reached a jury. Undisputed facts require judgment in the employer's favor. Plaintiff's counsel and the district judge have confused necessary with sufficient conditions. Casanova's claim of in-

6                                                                                       No. 09-1020

jury (which implied that sooner or later he would want workers' compensation benefits) was a necessary condition of the discharge. But it was not a sufficient condition. Cf. *United States v. Hatfield*, 591 F.3d 945 (7th Cir. 2010) (discussing the many different senses in which judges, and logicians, use the concept of causation).

Thousands of employees receive workers' compensation benefits from American Airlines every year without being fired; Casanova himself had received benefits several times yet remained an employee in good standing. Some baggage handlers have made ten or more compensation claims, returning to active duty after each injury healed. So a claim of workers' compensation benefits does not lead to discharge at American Airlines. What does—what was the sufficient cause of Casanova's discharge—is dissembling and insubordination. American Airlines has a zero-tolerance policy for material lies by its workers. Casanova has not identified any other worker who behaved in a similar fashion at and after an Article 29F hearing and was *not* fired. Indeed, it is almost impossible to conceive that any employee who conducted himself in this fashion would not be fired, by American Airlines or any other employer that wants to maintain the respect and obedience of its labor force. If Casanova had been retained on the payroll, American Airlines could have kissed the Article 29F procedure goodbye.

Just the other day we held that Illinois permits employers to use surveillance to test the bona fides of a workers' compensation claim, and we deemed a suit

No. 09-1020 7

similar to Casanova's to have been frivolous. *Gacek v. American Airlines, Inc.*, No. 09-3131 (7th Cir. July 15, 2010). That conclusion has the strong support of *Clemons v. Mechanical Devices Co.*, 184 Ill. 2d 328, 704 N.E.2d 403 (1998), which rejected an argument that but-for causation is enough to establish retaliatory discharge.

An employee on leave following an injury wanted immediate payment for work he had performed before the injury. The employer replied that these wages would be in the next scheduled payroll; the employee demanded faster payment. When the employer told him that the only way to be paid earlier was to quit—for state law requires full payment on an employee's last day—the worker again insisted on having the money instantly. The employer complied and told the employee that this ended his employment. In the ensuing suit, a jury concluded that the workers' compensation claim was a but-for cause of the discharge, and the Supreme Court of Illinois reversed. It held that, if an employer argues that some supervening cause explains the discharge, the worker can recover only by establishing that the employer's explanation is pretextual. A mistake differs from a pretext, the court added: the employer in *Clemons* was wrong in believing that state law entitled it to defer payment until the next pay period, but as long as the belief was sincere it meant that the plaintiff had not established the required form of causation. See also, e.g., *Grabs v. Safeway, Inc.*, 395 Ill. App. 3d 286, 917 N.E.2d 122 (2009), and *Finnerty v. Personnel Board*, 303 Ill. App. 3d 1, 707 N.E.2d 600 (1999), which like *Clemons* reject the argument that a fired worker can establish causation

by showing that a workers' compensation claim set in motion a chain of events that ended in discharge.

American Airlines offered Casanova's conduct at and after the Article 29F hearing as the explanation for his discharge. He did not provide evidence from which a reasonable jury could conclude that this explanation was pretextual (meaning that the employer did not itself believe it). Indeed, he did not try. He conceded that he had lied and refused to follow directions. He did argue that the employer should not have used the Article 29F procedure, but no rule of Illinois law disables employers from requiring workers to answer questions related to their injuries—and, as *Clemons* shows, even if the employer's invocation of the Article 29F procedure had been unwarranted (which it was not), still the right question would be whether Casanova's balking was a sufficient reason for his discharge. This record does not present a material dispute about why Casanova lost his job. American Airlines is entitled to judgment as a matter of law under Rule 50.

REVERSED